# Leahey *v.* O'Connor.

*Equity—Fraud on wife in making will—Contract—Cross-bill—Partition.*

1. Where a husband makes a will giving all of his estate to his wife absolutely and in fee, and at the same time an agreement is signed by testator, his wife, and one of two other parties mentioned in the paper, by which the wife agrees to convey all the property given to her by the will to the two other parties as trustees to hold for her life and to distribute the principal to the testator's own collateral heirs and next-of-kin, and the chancellor finds as a fact, on sufficient evidence, that the agreement was secured by a fraud on the wife, a bill filed as trustee by the party who signed the agreement, against the wife to compel performance of the contract, will be dismissed.

2. In such case, the party who was mentioned in, but did not sign, the agreement, has no standing to file a cross-bill to establish the rights of testator's next-of-kin, inasmuch as there was no contract, and he was not trustee.

3. A cross-bill so filed, containing an alternative prayer for partition of real estate, is defective as a petition for partition, if it

does not name the collateral heirs of testator, or those entitled under the intestate laws, and does not show the cross-plaintiff's right to ask partition on behalf of such persons, and does show that the widow is in sole possession of the real estate and claims absolute legal title against plaintiff and all others, thus imparting an element of controversy not appropriate in partition proceedings.

*Appeals—Question not raised in court below—Exceptions—Evidence—Witness—Attorney and client.*

4. On appeal, an objection that a lawyer should have been barred from testifying adversely to the interests of a deceased client, cannot be considered, where no such objection was raised in the court below, or where the objection was that the evidence was irrelevant and immaterial and not cross-examination.

5. Nor is such an objection well founded where it appears that the witness was acting in the matters under investigation as the private secretary of the testator, and not as his attorney.

6. Where a witness fully answers a question addressed to him, and no exception is taken, and subsequently answers other questions to which exceptions are taken, the appellate court will not consider an objection to the first question unless the exceptions subsequently allowed to the other questions were broad enough to cover the answer to the first question.

Argued October 15, 1924. Appeal, No. 104, Oct. T., 1924, by Peter J. Little, trustee, from decree of C. P. Cambria Co., dismissing bill in equity, in case of R. Edgar Leahey, trustee and attorney-in-fact for Margaret B. O'Connor, Peter J. Little, cross-plaintiff, v. Margaret B. O'Connor. Before MOSCHZISKER, C. J., WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Bill in equity to enforce performance of an alleged contract. Before BARNETT, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

Bill and cross-bill dismissed. Cross-plaintiff appealed.

*Errors assigned* were, inter alia, decree and ruling on evidence, quoting record.

*William M. Hall,* for appellant.—There is nothing illegal in an agreement by which a devisee is to do something or hold property in a certain way in consideration of the light of the fact that the will and the agreement are manifestly part of the plan: Gaullaher v. Gaullaher, 5 Watts 200; Parker v. Urie, 21 Pa. 305; Brook's App., 109 Pa. 188; Hollis v. Hollis, 254 Pa. 90; Washington's Est., 220 Pa. 204; Haskell's Est., 212 Pa. 469.

*Philip N. Shettig,* with him *F. J. Hartman* and *Charles A. Poth,* for appellee.—Appellee, Mrs. O'Connor, is not bound by the agreement on account of fraud practiced in securing her signature: Darlington's App., 86 Pa. 512; Campbell's App., 80 Pa. 298; Odenwelder's Est., 1 Pa. Superior Ct. 345; Nichols v. Nichols, 149 Pa. 172.

The absolute devise to the wife is not subject to any trust: Schultz's App., 80 Pa. 396.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, November 24, 1924:

The court below dismissed a bill in equity and a cross-bill, hereinafter more fully described, and the plaintiff in the latter has appealed.

The original bill was filed by R. Edgar Leahey, claiming to be "trustee and attorney-in-fact for Margaret B. O'Connor [hereinafter called the defendant], under a certain [written] agreement." The bill recited that Francis J. O'Connor died August 13, 1920, testate; that, after sundry bequests, he devised the residue of his estate to his widow, the defendant, absolutely and in fee; that, on the day of the execution of his will, April 8, 1920, the written agreement in controversy was entered into between testator, defendant, plaintiff and Peter J. Little (cross-plaintiff), whereby it was agreed that defendant would appoint Little and Leahey as her trustees and attorneys-in-fact to manage the estate left to her under the will and would authorize them "to sell, convey

and dispose of the same [with certain exceptions] as they should deem proper and advantageous." The bill avers, "said written agreement" provides that, "in consideration of the execution of the will aforesaid," defendant would, "at any time, upon request" of plaintiff and cross-plaintiff, convey to them the property devised to her by the will of Francis J. O'Connor, "to the intent that the residue of such estate should [eventually] be distributed to the collateral heirs" of testator, but upon condition that the grantees would, as trustees, pay to defendant, "out of the income or principal of said estate in their hands," a monthly sum to meet her living requirements. Plaintiff then avers that, though the name of Little (cross-plaintiff) is mentioned in the written agreement, he did not join in its execution, and had subsequently "declared he would not act as trustee thereunder"; that this action left plaintiff as the one solely entitled to enforce the agreement against defendant; that he had made demand on the latter to execute and deliver to him proper deeds of conveyance and bills of sale of the real and personal estate involved, with which demand she had refused to comply. The bill prays "that defendant be ordered......to perform specifically her covenants under said written agreement.....by executing and delivering unto [plaintiff] proper deeds of conveyance and bills of sale, so as to vest in [him, as trustee,] all of the estate......of which the said Francis J. O'Connor died seized or possessed, subject to the reservations......and......conditions......set out in said agreement."

Defendant's answer, while admitting many of the facts recited in the bill, states that the contents of the alleged agreement were unknown to her when she signed it; that her signature had been secured by "fraud and concealment" of material facts and legal rights; therefore the writing was not binding upon her.

The cross-bill of Peter J. Little,—who was first permitted to intervene as a defendant,—follows the lines of

the original bill, but recites the additional fact that an arrangement quite like the one contempated by the documents now before the court was entered into by the O'Connors five years previous thereto, and had been evidenced by somewhat similar writings at that time. The cross-plaintiff alleges that testator made his will, "in consideration of the execution by his said wife of the [contemporaneous] agreement......and in reliance upon her good faith [and] willingness......to fully perform and carry out the same......[and that she], by her voluntary execution and delivery of said agreement, contemporaneously with the execution by said testator of his will, induced the latter to make and publish his will devising the residue of his estate to defendant." Finally, the cross-bill sets forth and describes the real estate left by testator, with averments as to values, and states that, "since the death of said Francis J. O'Connor, said defendant has been......in possession of all the real estate owned by said testator and has collected and received the rents and profits thereof......and [that she] wrongfully, illegally and fraudulently claims to be the absolute owner of all the estate, real and personal, of said testator, subject to the pecuniary legacies mentioned in said will." The prayers of the cross-bill are for a conveyance by defendant to Little and Leahey of the estate devised to her by testator, to be held in trust by them for the purposes mentioned in the agreement; for an injunction and an accounting; and, "if for any reason it should appear that defendant is not legally and equitably bound to carry out and perform said agreement in toto, and that [she] is entitled to the interest in the estate of said testator secured to her under the intestate laws," then for partition of the real estate left by testator according to the rights of the parties entitled thereto.

The answer to the cross-bill denies that defendant had any greater knowledge of the previous arrangement concerning the disposition of her husband's property than

she had of the alleged agreement of 1920; and, as to the latter, defendant avers that she was "unaware of the contents and purport of said paper when the same was signed" by her. She further states that her rights as a wife were not explained to her, and that neither the extent of the estate of Francis J. O'Connor nor her rights therein were disclosed to her by testator, plaintiff or any other person. Defendant particularly denies that testator's will was made in consideration of the execution of the alleged agreement or that she had in any manner induced the devise to her.

The chancellor found the facts as to which there was no controversy substantially as stated in the foregoing recitals. He also found that, originally, the cross-plaintiff had presented for probate both the will and the alleged agreement, claiming that they, together, constituted one testamentary document; that these papers were accepted accordingly and their probate sustained by the orphans' court, but that, on appeal, our court had held the alleged agreement not to be testamentary in character: see O'Connor's Est., 273 Pa. 391.

The adjudication also contains, inter alia, the following findings: that O'Connor and plaintiff Leahey, who was the former's confidential secretary, had for years pursued a "studied effort" to prevent defendant from "knowing anything about the plan," represented by the agreement, for the disposition of testator's estate; that the purpose of this plan was to deprive the widow of her rights under the law, and the Commonwealth of its collateral inheritance tax, and, in the end, to vest testator's property in persons of his own blood; that, at the time defendant signed the alleged agreement, in her husband's room at the hospital, she was in such an emotional state as to prevent her understanding its contents had it been read or explained to her, but, as a matter of fact, "the paper was not read or explained......and she was given no opportunity to read it"; that she was not told and did not know what estate her husband had or what

her rights were in its disposition; that it was not even intimated to her "that the paper she was asked to sign in any way affected her interest in her husband's estate, or that the paper differed in any way from numerous papers she for years had been accustomed to sign, without question, to facilitate the transaction of her husband's business affairs"; that the papers signed by defendant five years previous to those in controversy were executed under different attending conditions, and defendant was then equally uninformed as to her rights and had no more knowledge of the contents of the prior documents than she afterwards had of those now before the court; that defendant's husband, even after the execution of the papers in controversy, had assured her, "I am leaving you my entire estate"; that defendant is in absolute possession of all the real estate in controversy and has refused to carry out the alleged agreement to convey it to plaintiff and cross-plaintiff; that "testator made his will in the form in which it was probated voluntarily and without inducement on the part of defendant by word or deed"; finally, that "defendant's signature was obtained by concealment and fraud, to defeat her title under testator's voluntary will."

On the above findings, the chancellor properly concluded that "plaintiffs have no standing in a court of equity to set up the agreement of April 8, 1920,...... defendant is not bound by [it] and cannot be compelled to carry out its provisions."

The chancellor stated and discussed other conclusions of law, apparently in an effort to meet certain issues, sought to be raised by the averments of the cross-bill, as to the effect of the alleged agreement on the rights of plaintiff and the collateral heirs of testator in the estate left by the latter; but, as shown in the following paragraph, it is not necessary to treat of those conclusions in disposing of the present appeal.

The cross-bill was filed by Little as trustee under the alleged agreement, which the chancellor found to be

fraudulent and void. As there was no contract, it follows that Little was not a trustee thereunder, and, hence, had no standing to raise the issues which he sought to have adjudicated; consequently, the court below might have dismissed the cross-bill without deciding more than was necessary under the averments of the original bill and answer,—that is to say, the issues as to alleged fraud; and when they were found in favor of defendant, the chancellor need only have determined their legal results, namely, that plaintiffs had no right to the relief sought,—or, in other words, no right to enforce the alleged contract against defendant.

True, the cross-bill contains an alternative prayer for partition, but, as a petition for partition, the bill is defective in many respects: (1) it does not name or attempt to name the collateral heirs of testator, or the parties entitled under the intestate laws, which is essential (Ragan's Est., 7 Watts 438, 439-41: Thompson and Wife v. Stitt, 56 Pa. 156, 159-60; Richards v. Rote, 68 Pa. 248, 251-53; Danhouse's Est., 130 Pa. 256, 259; Klingensmith's Est., 130 Pa. 516, 522; while the foregoing are orphans' court cases, the broad principle involved is equally applicable to all partition proceedings: see also section 9, Act of April 25, 1850, P. L. 569, 571, and Reid v. Clendenning, 193 Pa. 406, 419); (2) it does not aver or endeavor to show the cross-plaintiff's right to ask partition on behalf of such persons, whoever they may be; (3) it shows that defendant is in sole possession of the real estate in question and that she claims absolute legal title against plaintiffs and all others, thus imparting an element of controversy which ordinarily has no place in a proceeding for partition (Lewis v. Pratt, 2 Wh. 80, 81, 82, 90, 91; Law v. Patterson, 1 W. & S. 184, 193; McMasters v. Carothers, 1 Pa. 324; Bigley v. Jones, 114 Pa. 510, 519; Wister's App., 115 Pa. 241, 246).

It is idle to contend that appellant was asserting the equitable title of third parties for whom he acted as trustee under the alleged agreement, and that, therefore,

the strict rules which control forms of partition other than those in equity do not apply (Church's App., 17 W. N. C. 541), for, as already noted in our recital of the pleadings, the prayer of the cross-bill expressly makes the suggested right of partition to depend on the possibility of the court below finding that the so-called agreement lacked validity as binding on defendant and that decedent's property was distributable under the intestate law. From this latter standpoint, appellants show no right to represent the collateral heirs of testator or to tender issues to be determined for or against their interests. We conclude that the cross-bill was entirely ineffective in its attempt to bring about a partition of the real estate in controversy between defendant and others who might be entitled under the intestate laws, and, since the latter are not parties to the present proceeding, matters which may affect rights claimed by them should be considered only to the extent necessary to decide issues raised by the original bill and answer.

On the pleadings and evidence, and under the findings on the issues of fraud, the court below did not err in refusing to enforce against defendant the alleged written agreement.

The above conclusion in effect disposes of all the assignments of error except the thirty-fifth, which complains of a ruling on the evidence. When plaintiff Leahey was on the stand as a witness in his own behalf, he was asked a question as to what sort of discussion he and testator had prior to April, 1920, about drawing the latter's will. This was objected to "as irrelevant and immaterial and not cross-examination." Following some talk between counsel and the court, the question was allowed and put to the witness thus, "What sort of discussion did you [and testator] have along that line?" To this question the witness answered, "We talked over different matters that he had intended to insert in the will and this agreement." After this responsive answer, another question was put: "What was the purpose [the

testator] had in mind by having this agreement drawn, as he disclosed it to you?" and, again, "What reason did he give?" Answering these questions, and others along the same line, the witness stated facts which were subsequently used by the court below in making its findings on the issues of fraud. Appellant now argues it was wrong to receive this testimony, and he attempts to assign its admission as error, under the exception above noted, which is the only exception in this part of the record.

As we read the testimony, the question objected to was fully answered before the evidence now complained of was elicited; but, treating the exception granted appellant as broad enough to cover the testimony in controversy, we cannot sustain appellant's contention that the witness should have been barred from giving evidence on the ground that he was testifying adversely to the interests of a decedent for whom he had been attorney. In the first place, appellant's objections stated no such ground of complaint, and, secondly, the evidence indicates that the witness, while a lawyer, acted in the matters under investigation as the private secretary of testator, not as his attorney.

The decree dismissing the bills is affirmed at cost of appellant.